### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHELE D. ABERNATHY,**

    **Plaintiff,**

v.           **CIVIL ACTION NO.: 5:22-CV-37**
             **(JUDGE BAILEY)**

**KILOLO KIJAKAZI,**
**Commissioner of Social Security,**

    **Defendant.**

### <u>REPORT AND RECOMMENDATION</u>

This case arises from the denial of Plaintiff Michele D. Abernathy's ("Plaintiff") Title II application for disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, ("Defendant" or "Commissioner"). Now, Plaintiff seeks judicial review of Commissioner's decision.

The undersigned U.S. Magistrate Judge reviewed the parties' motions and oral arguments as well as the administrative record. Because the Commissioner's final decision contains errors which prove not to be harmless, the undersigned now issues this Report and Recommendation to the District Judge **RECOMMENDING** that Defendant's Motion for Summary Judgment, ECF No. 18, be **DENIED**, Plaintiff's Motion for Summary Judgment, ECF No. 17, be **GRANTED**, and the Commissioner's decision be **REVERSED** and that this case be **REMANDED** for further reconsideration.

1

## I.  **PROCEDURAL HISTORY**

On December 6, 2019, Plaintiff Michele D. Abernathy ("Plaintiff") filed a claim for disability, DIB, and Title XVI supplemental security income with an alleged onset date of disability of November 20, 2019. R. 114. Plaintiff's claims were initially denied on April 29, 2020, and upon reconsideration on January 7, 2021. R. 35, 111-168. After the denials, on January 20, 2021, Plaintiff requested a hearing before an ALJ. R. 35. On July 22, 2021, a hearing was held before ALJ Regina Carpenter. R. 15, 55-92. On August 10, 2021, the ALJ issued a decision concluding Plaintiff was not disabled within the meaning of the Social Security Act. R. 35-49.

The Appeals Council denied Plaintiff's request for review on December 28, 2021, making the ALJ's decision the final decision of the Commissioner. R. 1-6.

On March 2, 2022, Plaintiff, by local counsel Brian D. Bailey, filed a Complaint in this Court to obtain judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. On May 19, 2022, the Commissioner, by counsel Erin K. Reisenweber, Assistant United States Attorney, filed an answer and the administrative record of the proceedings. Answer, ECF No. 12, Admin. R., ECF No. 13.

On June 27, 2022, Plaintiff filed Plaintiff's Motion and Brief in Support of Plaintiff's Motion for Summary Judgment, ECF Nos. 17 and 17-1. On July 26, 2022, Commissioner filed her Motion and Memorandum in Support of Motion for Summary Judgment, ECF No. 18. On August 1, 2022, Plaintiff filed her Reply Brief in Support of Motion for Summary Judgment. ECF No. 19.

Thereafter, oral arguments were scheduled by Order, ECF No. 20, rescheduled, ECF Nos. 21, 22, 23, and ultimately held on September 27, 2022. At oral arguments, Plaintiff was represented by *pro hac vice* counsel, Dana W. Duncan, and the Commissioner was represented by counsel,

Quinn Niblack-Doggett, Assistant Regional Counsel for the Office of General Counsel to the Commissioner.

Following a request at the oral arguments, the Court, by paperless order, ECF No. 25, authorized that the Plaintiff may, if desired, provide supplemental authorities on or before September 30, 2022, and the Commissioner, may, if desired, provide supplemental authority as to her position on or before October 7, 2022. Neither party provided supplemental authority or responses.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

## II.   BACKGROUND

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. ECF No. 14 at 1-2. The undersigned relies upon those parties' recitation of the facts[1] throughout this report and recommendation but, for the sake of completeness, after considering the record in full, the undersigned will highlight select factual information below.

### A. Medical Treatment and Opinion by Dr. John F. Brick, M.D.

On January 1, 2019, Plaintiff saw Dr. John F. Brick, M.D. for a return patient visit. R. 466. Plaintiff reported to Dr. Brick that she was not very "depressed" and was tolerating the medication Gilenya well, despite her husband saying she was "moody." Id. He noted normal results, including

---

[1] See Pl's Brief in Supp. Mot. Summ. J., No. ECF 17-1 at 5-8; Def.'s Mem. Supp. Mot. Summ. J., ECF No. 18-1 at 2-8 (generally agreeing with Plaintiff's proposed facts and supplementing).

a normal gait and normal motor strength, upon examination. Id. Dr. Brick ordered for Plaintiff's Wellbutrin to be increased and directed Plaintiff to call in three weeks if the Wellbutrin did not help with mood and headaches. R. 467.

On July 29, 2019, Plaintiff saw Dr. Brick for a return patient visit. R. 463. At the visit, Dr. Brick recorded that Plaintiff reported that she has daily headaches and ongoing MS. Id. He noted normal results upon examination. Id. Dr. Brick prescribed topiramate for the headaches and ordered blood work. Id.

On December 10, 2019, Plaintiff saw Dr. Brick for a return patient visit. R. 393. At the visit, Dr. Brick noted that Plaintiff was describing having "[e]pisodes of drawing her right arm up. No jerking. Arm not weaker afterwards." Id. He further observed that Plaintiff's "[g]ait [was] unsteady" even though her coordination was normal. Id. Dr. Brick ordered that an electroencephalogram ("EEG") and blood work be performed on Plaintiff, and further, that Plaintiff be "[s]et up for [O]crevus." R. 394.

On the same date, Dr. Brick wrote a Letter stating: "Michelle Abernathy is my patient. She has multiple sclerosis. She is greatly debilitated by this condition[,] and I believe she should be totally and permanently disabled because of this medical affliction." R. 394.

On April 13, 2020, Plaintiff attended a telemedicine visit with Dr. Brick. R. 1061-1064. At the telemedicine visit, Plaintiff reported no complaints regarding her gait, fatigue, bladder, memory, or mood. R. 1061. Dr. Brick noted that Plaintiff was "[d]oing ok with the [O]crevus. Alert, Speech fluent. [Cranial nerves] seem okay. Imp MS." R. 1064. Dr. Brick ordered that Plaintiff continue the Ocrevus and submit more blood work. Id.

On June 9, 2020, Dr. Brick completed a "Medical Source Statement of Ability to do Work-related Activities (Physical)" form. R. 1100-1105. In the Statement, Dr. Brick opined that Plaintiff

can occasionally carry up to twenty (20) pounds, can stand and walk up to thirty (30) minutes without interruption, can sit up to four (4) hours, stand up to one (1) hour, and walk up to thirty (30) minutes during an eight-hour workday with the rest of the workday to be spent lying down. R. 1101. Dr. Brick reported that Plaintiff is able to perform shopping, can ambulate without using a wheelchair, walker, two canes, or two crutches, can climb a few steps at a reasonable pace with the use of a single handrail, can prepare a simple meal and feed herself, can care for her own personal hygiene, and can sort, handle, or use paper/files. R. 1105. Dr. Brick left blank many areas on the form prompting the medical source to "identify particular medical or clinical findings . . . which support your assessment or any limitations and why the findings support the assessment." R. 1101-1104. Dr. Brick, however, also wrote "gait unsteady falls frequently" on the last page to support his assessment. R. 1105.

On June 9, 2020, Dr. Brick also completed a "Multiple Sclerosis Residual Functional Capacity Questionnaire." R. 1109. On this questionnaire, Dr. Brick described that he has had approximately ten to fifteen years of contact with Plaintiff, that her diagnosis is "MS", and her prognosis is "Fair." Dr. Brick identified that Plaintiff's symptoms specifically include bladder incontinence, speech and communication difficulties, memory problems, emotional lability, poor muscle coordination, fatigue, numbness/pins and needles, loss of balance, weakness, and unstable walking. R. 1109. Dr. Brick described that Plaintiff has significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station. Id. In particular, Dr. Brick explained that Plaintiff "staggers and falls." Id. Dr. Brick indicated that Plaintiff has significant fatigue with substantial muscle weakness with repetitive activity which is the result of neurological dysfunction. Id. Dr. Brick specifically indicated that Plaintiff's muscle weakness is "mild-moderate." Id.

5

Dr. Brick further indicated that emotional factors contribute to the severity of Plaintiff's symptoms and functional limitations and that Plaintiff's symptoms are severe enough to often interfere with attention and concentration. R. 1110. Dr. Brick explained that Plaintiff would need a job that permits shifting positions and Plaintiff would need to take unscheduled breaks through an eight (8) hour workday. Id.

On August 17, 2020, Plaintiff attended a telemedicine visit with Dr Brick. R. 1124. He noted her speech was "fluent" and she was "alert." R. 1125. Dr. Brick directed that blood work should be checked in September when she came in for her next Ocrevus infusion and that Plaintiff return in four months for a checkup visit.  R. 1124-1125.

On December 15, 2020, Plaintiff returned for an in person visit with Dr. Brick. R. 1173-1176. Plaintiff reported she was "[d]oing about the same" and wanted to try to get her Ocrevus infusions closer to home. R. 1174. Dr. Brick again ordered blood work, a continuation on her Ocrevus, and a return visit within seven months. R. 1175.

**B. Opinion of State Agency Physician Dr. Rabah Boukhemis, M.D.**

On August 25, 2020, Dr. Rabah Boukhemis, M.D. provided a Physical Residual Functional Capacity Assessment based upon the medical evidence of record and Plaintiff's report activities of daily living. Dr. Boukhemis indicated that Plaintiff has manipulative limitations, including limited reaching in any direction, including limitations in reaching front, laterally, and overhead on the left and right sides. R. 123. Dr. Boukhemis specifically stated Plaintiff has "frequent limitations" in reaching but can do so "occasionally." R. 124. Dr. Boukhemis further explained that Plaintiff can "occasionally lift and carry up to 20 lbs" but also wrote that Plaintiff has "manipulative limitations" in her right hand. R. 125. Dr. Boukhemis wrote that Plaintiff can perform gross manipulation "60% of the time" and reaching "60%" of the time. R. 125. Dr.

Boukhemis contacted Dr. Brick for more information on June 4, 2020 and relayed that Dr. Brick independently advised that Plaintiff "Can Lift 10 #, Neurogenic bladder. Staggers, Can't walk an hour, Hands and Feet Clumsy. Inconsistent reaching overhead." R. 125.

On January 2, 2021, Dr. Rabah Boukhemis, M.D. provided an updated Physical Residual Functional Capacity Assessment based upon the medical evidence of record and Plaintiff's report activities of daily living. R. 161, 184.

This January 2, 2021 RFC opinion from Dr. Boukhemis included feedback and a report provided by the agency's Disability Quality Branches ("DQB") on December 21, 2020. Id. It is stated that this case was "referred in part [to DQB] because reaching limitations are inconsistent. Are they frequent or are they occasional." R. 184. The DQB feedback included therein went on to state that Dr. Boukhemis's August 25, 2020 RFC failed to "address duration" and urged "[p]lease see DI 24510.020 re duration." Id. Moreover, the DQB feedback stated that "[e]ven if Dr. Brick could determine worsening via a cursory, unwritten, examination, there is no evidence the exacerbation would have met duration." Id. The DQB feedback concluded by stating, in Recommendation that Plaintiff "alleged to be much worse than she was at the time of 03/25/20 CE. Three months have now passed since the alleged 06/04/2020 exacerbation. A repeat thorough neurological examination is indicated." Id.

Dr. Boukhemis reviewed the DQB report and responded that at a consultative exam on November 25, 2020, Plaintiff had a "slightly [l]imping gait . . . UE Mostly 5/5 fair grip and [m]anip." R. 184. Dr. Boukhemis went on to write that "[t]he neuro CE is somewhat [u]nreliable and inconsistent and [Plaintiff] may not be cooperating fully." R. 184. Dr. Boukhemis further wrote there was new medical evidence of record as of December 15, 2020 which indicated that gait coordination was "normal" and the medical source statement used the word "malingering." R.

184. Dr. Boukhemis went on to write "It Looks That we may have issues w/ credibility and cooperation not only w/ The CE but also with The audiogram. The latest neuro exam seems to show some improvement as per DR Brick Neuro assessment on 12/15/2020 above. Light RFC." R. 184. Lastly, Dr. Boukhemis wrote that "Concerning duration I suspect DQB meant MS exacerbation do improve occasionally and do not last 12 months therefore instead of allowance its Light RFC as above." R. 13-3.

### III. THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (2006). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

[Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920 (2011).]

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920 (2011). If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

### III.     ADMINISTRATIVE LAW JUDGE'S DECISION

Utilizing the five-step sequential evaluation process described above, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since November 20, 2019, the alleged onsent date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: multiple sclerosis; diabetes mellitus; obesity; and unspecified depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with the following limitations: a sit-stand option allowing for a brief change of position for 1-2 minutes every 30 minutes; no climbing, balancing, or crawling, as those are defined in the DOT/SCO; no more than occasional crouching, kneeling, or stopping, as those are defined in the DOT/SCO; no more than occasional exposure to vibration; no exposure to hazards, such as dangerous moving machinery or unprotected heights; can understand, remember and

9

carry out tasks that can be learned in one month or less; no fact paced production, such as assembly line or piecemeal productive quotas; no more than occasional changes in work routine; and no more than occasional decision making.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 10, 1972, and was 47 years old, which is defined as a younger individual aged 45-49, on the alleged disability date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

R. 35-49.

## IV.   <u>DISCUSSION</u>

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1968)).

"The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1157, 203 L. Ed. 2d 504 (2019); *see also* <u>Sizemore v. Berryhill</u>, 878 F.3d 72, 80-81 (4th Cir. 2017). However, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment…if the decision is supported by substantial evidence." <u>Hays</u>, 907 F.2d at 1456 (citing <u>Laws</u>, 368 F.2d at 642; <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 529 (4th Cir. 1962)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

### B. Written Contention of the Parties

Plaintiff argues that (1) the ALJ erred in assessing the persuasiveness of the Dr. John Brick's opinions consistent with 20 C.F.R. § 1520c; and (2) the ALJ erred in failing to adequately address and provide rationale for reaching restrictions in this case. ECF No. 17-1 at 3, 5.

Defendant responds and argues that (1) the ALJ properly considered the persuasiveness of Dr. Brick's opinion; and (2) substantial evidence supports the ALJ's restrictive RFC assessment. ECF No. 18-1 at 8, 10.

In her Reply, Plaintiff further argues that the ALJ erred in evaluating the medical opinions of Dr. John Brick, M.D. and finding Dr. Brick's opinions to be non-persuasive because the ALJ's statement does not adequately address supportability or consistency as required by the regulation and because the ALJ "overlooked" certain findings by Dr. Brick that Plaintiff's MS was exacerbated and that she was receiving intravenous infusion medication for her MS. Plaintiff summarizes her argument by stating "[i]n short, the ALJ failed to account for the fact that

Abernathy's MS was a progressively disabling condition and carried a level of support for the treating physician's opinion merely by virtue of its diagnosis." ECF No. 19 at 9.

Plaintiff notes that the ALJ found that Dr. Brick's "opinion [was] overstated, unsupported, and inconsistent with the record." ECF No. 19 at 11 (quoting R. 46). However, Plaintiff asserts that the ALJ failed to articulate how that opinion was overstated, unsupported, or inconsistent. Id.

### C.  Oral Arguments

On September 27, 2022, the undersigned held oral arguments by videoconference/teleconference in this matter. ECF No. 24. The Commissioner appeared through counsel Quinn Niblack-Doggett, and Plaintiff appeared through *pro hac vice* counsel Dana W. Duncan and local counsel Brian D. Bailey. Oral argument was set by Order, [ECF No. 20], on two issues: (1) whether the Administrative Law Judge ("ALJ") erred in evaluating the persuasiveness of the opinion of Dr. John Brick, M.D., particularly in light of Plaintiff's multiple sclerosis; and (2) whether the ALJ erred in failing to adequately address the need for reaching restrictions or failed in providing rationale as to why such limitations would be unnecessary.

First, Plaintiff, by counsel, proffered, citing to R. 393, 463, 466, 1109, 1110, 1063, 1124, and 1173, that Dr. John Brick, M.D. is a neurologist that has been treating Plaintiff for ten-to-fifteen years and continues to see her on a semi-regular basis, either approximately every six months or when Plaintiff's had an event or exacerbation in symptoms.

Plaintiff's counsel explained that the nature of Plaintiff's condition, multiple sclerosis, means there will be flares or periods of condition worsening or exacerbation as well as times where the condition is milder, but Dr. Brick's assessments were based on his long-term treatment of Plaintiff and his overall opinion upon review of Plaintiff's record, not just during Plaintiff's December 2019 MS flare. Plaintiff's counsel argued that the reason for changes to the treating physician rule was to reflect changes in the national healthcare system and the way people receive

primary medical care, and now, under the new rule, ALJs must be certain to articulate and narrate their reasoning for finding medical opinions as persuasive or unpersuasive, supported or unsupported, and consistent or inconsistent with other medical opinions. Plaintiff's counsel argued that the ALJ failed to provide that articulate, narrative, comparative reasoning in this case.

Counsel for the Commissioner argued that the ALJ followed the agency regulations in making her decision, and the proper standard of review is whether substantial evidence supports the ALJ's decision and RFC findings, and here, even if not laid out perfectly by the ALJ in her decision, the ALJ did discuss findings in the record, such as the emergency records related to the flare-up in December 2019, which support her RFC assessment. Furthermore, counsel for the Commissioner argued that the RFC reflects the ALJ's careful consideration of Plaintiffs' limitations as it is very restrictive – limiting Plaintiff to only limited, sedentary work.

Plaintiff's counsel countered that, while one applicable standard upon judicial review in Social Security cases is substantial evidence, where an ALJ does not follow the proper regulations in their decision making, an error of law has occurred regardless of the evidence in the record or whether the ALJ "more or less" got it right.  Plaintiff's counsel argued that the Fourth Circuit has established that an ALJ cannot "cherrypick" the record,[2] and while there are records evidencing periods of less MS symptoms for Plaintiff, overall, the medical opinions and records are consistent as to Plaintiff's MS symptoms, and the ALJ failed to assess that consistency or supportability. Plaintiff's counsel concluded by arguing that the ALJ's error of law in assessing the medical opinion of Dr. Brick requires remand regardless of the evidence to be found in the record.

---

[2] *See* Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability").

Second, Plaintiff, by counsel, argued that, where the ALJ found the state agency doctors to be persuasive, the ALJ should have addressed the need for reaching restrictions or provided rationale as to why there were not reaching restrictions included in the RFC. Plaintiff argued that the ALJ erred by ignoring reaching limitations suggested throughout the record, erred by not addressing the suggested reaching limitations in her RFC, then erred by including at Step 5 three jobs that require reaching.

Counsel for the Commissioner conceded that both the state agency doctor, Dr. Boukemis, and Plaintiff's treating physician, Dr. Brick, found that reaching limitations would be appropriate for the Plaintiff. Counsel for the Commissioner responded, however, that the ALJ did consider the reaching limitations suggested by Dr. Brick in her opinion, R. 46, but found that the Dr. Brick's suggested limitations were inconsistent with the record. Counsel for the Commissioner further argued that Plaintiff did not allege any reaching restrictions in the Function Report submitted, R. 317, nor during testimony, nor in the application, and the ALJ only addressed in her opinion those limitations raised by Plaintiff. Counsel for the Government concluded her argument by suggesting that, while reaching limitations were considered and suggested by the doctors, the ALJ left out a reaching limitation because the medical evidence of record did not support the opinions of those doctors as persuasive, nor did it support including a reaching limitation in the RFC. The Government argued that, if there was any error by the ALJ, it was a harmless error.

Plaintiff counterargued that a mere reference to a reaching limitation in assessing the opinion of Dr. Brick is insufficient for purposes of considering Plaintiff's reaching capacity, particularly where the state agency doctor made a significantly limited finding in regard to Plaintiff's reaching capacity, yet the ALJ never addressed Plaintiff's reaching capacity. Plaintiff argued that under the newest regulations, ALJs are required to assess the consistency and

14

supportability when considering the persuasiveness of medical opinions, and, here, there were two medical professionals, Dr. Brick and Dr. Boukhemis, who both included reaching limitations in their assessments, yet no mention of reaching was included in regard to their consistency with other medical opinions or the record and no reaching limitation was explored in the RFC. Plaintiff moreover argued that this was not a harmless error where a reaching limitation, as suggested by Dr. Brick and state agency doctor, Dr. Boukhemis, would have precluded all three jobs suggested at Step 5.

After Plaintiff's request during the September 27, 2022 Oral Arguments, this Court provided counsel for both parties the opportunity to submit briefs with supplemental authority for their positions following the hearing.  ECF No. 25. However, neither counsel for Plaintiff nor counsel for the Commissioner filed such briefs with supplemental authorities.

### D.  Analysis of the Administrative Law Judge's Decision

### 1.    The ALJ erred by failing to give sufficient reasons for the weight afforded the medical opinion.

Regarding Dr. John F. Brick's medical opinion, ALJ Regina Carpenter wrote:

The medical source statements of Dr. John Brick, M.D dated June 2020 are not persuasive (Exhibits 7F and 8F). This source opines that the claimant is limited to standing for 1 hour, walking for 30 minutes, and sitting for 4 hours in total in an 8-hour day. He also opines to significant reaching, manipulative, and postural limitations. He goes on to opine that the claimant would miss more than four days a month of work (Exhibits 7F and 8F). Such restrictive limitations are inconsistent with the evidence of significant improvement in her overall physical functioning after her November 2019 flare, with some evidence of abnormal gait, but mostly intact strength. Additionally, Dr. Brick provides inadequate support for his findings, noting that the claimant staggers and falls. The claimant specifically denied falls as noted above and there is no evidence of any treatment for falls. Overall, his opinion is overstated, unsupported, and inconsistent with the record.

R. 46 (citing Exhibits 7F and 8F, R. 1100-1114).

Regarding Dr. Boukhemis and the other state agency doctors and consultants, the ALJ Carpenter wrote:

In reaching this decision, the state agency consultants' physical residual functional capacity assessments are not persuasive (Exhibit 1A, 2A, 7A, and 8A). These consultants found the claimant capable of a range of light to sedentary work. While they provided some support for their findings with specific notations to the minimally abnormal physical examination findings, the undersigned finds that a reduction to less than sedentary work, as detailed above, is more consistent with the claimant's multiple sclerosis diagnosis, with one significant flair, and residual gait abnormalities, all as detailed fully above.

The state agency mental assessments and residual functional capacity are also not persuasive (Exhibits 1A, 2A, 7A, and 8A). These consultants found marked limitations in the claimant's ability to understand, remember, and apply information; mild limitations in the claimant's ability to interact with others and concentrate, persistence, and maintain pace; and moderate limitations in her ability to adapt. While they provide some support for their findings, they rely heavily on the findings from the consultative examination. However, it is specifically noted within the consultative examination findings, that the claimant's test results cannot be relied upon as an accurate depiction of the claimant's functioning. As such, they provide inadequate support for their findings. Moreover, other than the mental status consultative examination, the mental status examinations found throughout the record are entirely normal. As such, their limitations are not consistent with the record as a whole. Due to the lack of any IQ or neurocognitive diagnosis, as well as, the claimant's activities of daily living detailed above, the undersigned finds support for no more than moderate limitations in her ability to understand, remember, and apply information. Given that she denies any significant social limitations, no limitations are support in this domain. Her depression and multiple sclerosis, in combination, result in moderate limitations in concentration, but her ability to maintain her own personal care and perform essentially intact activities of daily living, support no limitations in adapting.

R. 45-46.

Plaintiff Abernathy argues "ALJ failed to account for the fact that Abernathy's MS was a progressively disabling condition and carried a level of support for the treating physician's opinion merely by virtue of its diagnosis." [ECF No. 19 at 9]. Plaintiff argues that ALJ overlooked that Abernathy's MS was exacerbated, and she was receiving intravenous infusion medication for her MS. Plaintiff further argues that ALJ found Dr. Brick's opinion "overstated, unsupported, and inconsistent with the record" but failed to articulate how it was overstated, unsupported, or inconsistent. Plaintiff's counsel further argued at oral arguments that the ALJ's failed to specifically assess the consistency or supportability of Dr. Brick's opinion in light of his treatment notes and the record and in comparison to the state agency doctors (whom he was consistent with).

The Commissioner counters that the ALJ evaluated both supportability and consistency as required by the agency's regulations and explains that neither factor supported Dr. Brick's June 2020 opinion. The Commissioner notes that the ALJ articulated that Dr. Brick provided inadequate support for his findings, specifically only providing as support for his opinion that Plaintiff staggers and falls. ECF No. 18-1 at 8 (citing R. 1109).

An "ALJ has an obligation to consider medical opinions 'along with the rest of the relevant evidence' in a case." Cook v. Berryhill, No. 2:16-CV-85, 2018 WL 1010485, at *4 (N.D.W. Va. Feb. 22, 2018) (Bailey, J) (citing 20 C.F.R. § 404.1527(b)). For claims filed after March 27, 2017, an ALJ must consider medical opinions pursuant to 20 C.F.R. § 404.1520c *et seq*. Most

importantly, an ALJ must consider the factors of "supportability"[3] and "consistency"[4] when determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2) and (c).

While an "ALJ need not explicitly recount the details of this analysis in the written opinion," the ALJ must "give good reasons in the decision for the weight ultimately allocated to medical source opinions." Cook v. Berryhill, No. 2:16-CV-85, 2018 WL 1010485, at *6 (N.D.W. Va. Feb. 22, 2018) (Bailey, J.) (quoting Taylor v. Colvin, 2016 WL 4581338, at *4 (N.D. W.Va. 2016) (Bailey, J.)). Assignment of weight on grounds such as "the objective evidence," "the objective evidence or the claimant's treatment history," and the "objective evidence and other opinions of record" insufficient explanations as to why an ALJ assigns weight to particular opinions. Monroe v. Colvin, 826 F.3d 176, 191 (4th Cir. 2016).

"[A]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has failed to give a sufficient reason for the weight afforded a particular opinion[.]" Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015).

Here, the ALJ discounted *all* medical opinions provided – both those from the agency's doctors and consultants as well as Plaintiff's treating medical sources.[5] The Fourth Circuit, as well as numerous other courts, have historically admonished ALJs who discount all medical opinions

---

[3] "Supportability" is defined as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[4] "Consistency" is described as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

[5] *See* R. 46 ("In reaching this decision, the state agency consultants' physical residual functional capacity assessments are not persuasive[,]" "The state agency mental assessments and residual functional capacity are also not persuasive[,]" "The medical source statements of Dr. John Brick, M.D dated June 2020 are not persuasive[.]").

and rely solely on their own expertise and review of data in the record to determine a claimant's functional limitations. Wilson v. Heckler, 743 F.2d 218, 221 (4th Cir. 1984) (reversing and remanding ALJ decision which disregarded findings of both agency expert and treating physician and substituted ALJ's assessment); Ramos v. Barnhart, 60 Fed. App'x 334, 336 (1st Cir. 2003) (concluding that the ALJ substituted his own lay opinion for the uncontroverted medical evidence where the ALJ concluded that plaintiff did not have an impairment that was diagnosed by two examining physicians and not rejected by any examining physician); Davis v. Berryhill, No. 1:16-CV-61, 2017 WL 5129933, at *24 (N.D.W. Va. Aug. 8, 2017), report and recommendation adopted, No. 1:16CV61, 2017 WL 3736667 (N.D.W. Va. Aug. 30, 2017)("ALJs are not medical doctors, and the risk of misunderstanding or misinterpretation is all too real."); and Louk v. Colvin, 2016 WL 7383814, No. 2:16-CV-9 (N.D.W. Va., Nov. 30, 2016), report and recommendation adopted without objection, 2016 WL 7378941 (ALJ impermissibly discarded opinion of treating specialist and supporting medical opinions in favor of her own wholly inaccurate interpretation of the objective medical evidence).

Then, the ALJ provided insufficient reasons in the decision for the weight ultimately allocated to medical sources, particularly Dr. Brick. The ALJ summarily concluded that the opinions were inconsistent with "mental status examinations found throughout the record" or "overstated, unsupported, and inconsistent with the record" without articulating how or why. *See* Bartlett v. Colvin, No. 5:15-CV-76, 2016 WL 8136645, at *8 (N.D.W. Va. Mar. 31, 2016) (Seibert, J.) ("Saying the state agency consultants' opinions were 'fairly consistent with other substantial evidence' is the kind of conclusory statement the Fourth Circuit routinely rejects."), report and recommendation adopted, No. 5:15CV76, 2016 WL 1600843 (N.D.W. Va. Apr. 21, 2016) (Stamp, J).

While the ALJ did provide citations explaining the contents of opinions, e.g., "[Dr. Brick] goes on to opine that the claimant would miss more than four days a month of work (Exhibits 7F and 8F)[,]" she failed to provide relevant record information about Dr. Brick's opinion supportability, such as where in the record to find the "evidence of significant improvement," and further failed to assess Dr. Brick's opinion consistency, such as how consistent or inconsistent Dr. Brick's opinion was with "evidence from other medical sources and nonmedical sources in the claim[.]" 20 C.F.R. § 404.1520c(c)(2). Here, consistent with prior decisions, the undersigned "cannot find the ALJ's decision to be supported by substantial evidence when it is not sufficiently explained to determine the rationale between the evidence cited and [her] conclusions[.]" Davis v. Berryhill, No. 1:16-CV-61, 2017 WL 5129933, at *25 (N.D.W. Va. Aug. 8, 2017), report and recommendation adopted, No. 1:16CV61, 2017 WL 3736667 (N.D.W. Va. Aug. 30, 2017) (citing Radford v. Colvin, 734 F.3d 288 at *296 (4th Cir. 2013)). Because the ALJ did not sufficiently articulate the reasoning behind the weight afforded to the medical opinions, meaningful review is not possible. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment, ECF No. 18, be **DENIED**, Plaintiff's Motion for Summary Judgment, ECF No. 17, be **GRANTED**, and the Commissioner's decision be **REVERSED** and **REMANDED** for further consideration.

### 2. The ALJ failed to assess Plaintiff's reaching ability, and this failure further frustrates meaningful review.

ALJ Regina Carpenter found that Plaintiff has the residual functional capacity

to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with the following limitations: a sit-stand option allowing for a brief change of position for 1-2 minutes every 30 minutes; no climbing, balancing, or crawling, as those are defined in the DOT/SCO ; no more than occasional crouching, kneeling, or stopping, as those are defined in the DOT/SCO; no more than occasional exposure to vibration; no exposure to hazards, such as dangerous moving machinery or unprotected heights; can understand, remember and carry out tasks that can be learned in one month or less; no fact paced production, such as assembly

> line or piecemeal productive quotas; no more than occasional changes in work
> routine; and no more than occasional decision making.

R. 35-49. The ALJ explained in her opinion that the vocational expert testified that given all of

these factors Plaintiff be able to perform the requirements of an order clerk, DOT Code 209.567-

014, document preparer, DOT Code 249.587-018, or a credit card interviewer, 205.367-014.

Plaintiff Abernathy argues the ALJ should have considered the reaching limitations

contained in the assessments of Dr. Brick and Dr. Rabah Boukhemis and incorporated those

reaching limitations into the RFC. Plaintiff argues ALJ did not include any reaching restrictions

into the residual functional capacity and "[s]uch a limitation would have impacted the residual

functional capacity significantly as order clerk, document preparer, and credit card interviewer,

the occupations found by the ALJ to satisfy the Commissioner's burden of proof at step five, all

required frequent reaching." Plaintiff seeks remand because the ALJ erred in failing to adequately

address reaching restrictions. Plaintiff argues that "SSR 96–8p mandates that '[i]f the RFC

assessment conflicts with an opinion from a medical source, the adjudicator must explain why the

opinion was not adopted.'"

The Government argues that Plaintiff did not allege any reaching restrictions in the

Function Report submitted, (R. 317), and that Plaintiff has not met her burden in showing that she

required additional limitations. The Government argues that this Court should defer to the ALJ's

fact finding and leave the Commissioner's final decision undisturbed.

A claimant's residual functional capacity ("RFC") is the "most [a claimant] can still do

despite [their] limitations." 20 C.F.R. § 404.1545. Social Security Ruling 96–8p provides the

process for assessing a claimant's RFC. When assessing a claimant's RFC, an ALJ must "first

identify the individual's functional limitations or restrictions and assess his or her work-related

abilities on a function-by-function basis." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir.

2015)(quoting SSR 96-8p, 61 Fed.Reg. at 34,4474-01). The ALJ must "consider [the claimants] ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 416.945(a)(4).  This includes "all . . . medically determinable impairments of which [the ALJ is] are aware, including . . . medically determinable impairments that are not "severe[.]" 20 C.F.R. § 416.945(a)(2). The RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 780 F.3d at 636. (quoting SSR 96-8p, 61 Fed. Reg. at 34,474-01).

Additionally, Social Security Ruling 96-8p specifically provides that "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Policy Interpretation on Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

Failing to consider all of an individual's functional capacities to support an RFC assessment based on an exertional category creates the danger that the adjudicator will "either overlook the limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." Id. (quoting SSR 96-8p, 61 Fed. Reg. at 34,4474-01).  Remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Monroe, 826 F.3d at 188 (emphasis added) (quoting Mascio, 780 F.3d at 636). The reviewing court must first determine whether the ALJ failed to assess Plaintiff's capacity to perform relevant functions. See Id. If so, the court must then determine whether the

ALJ's failure frustrates meaningful review because of contradictory evidence or other inadequacies in the record. Id.

The positions of order clerk, document preparer, and credit card interviewer, or charge account clerk, while sedentary, all require reaching, handling, and fingering frequently. *See Dictionary of Occupational Titles*, DICOT 209.567-014 (Order Clerk, Food and Beverage); 249.587-018 (Document Preparer, Microfilming), and 205.367-014 (Charge-Account Clerk).

In his June 9, 2020 Multiple Sclerosis Residual Functional Capacity Questionnaire, Dr. Brick indicated that he has been treating Plaintiff for approximately ten-to-fifteen (10-15) years and Plaintiff can only reach with her arms overhead, perform fine finger manipulations, and use her hands to grasp, turn, and twist objects forty percent (40%) of the time using her right hand and sixty-to-eighty percent of the time using her left hand during an eight-hour working day. R. 1112. Dr. Brick also noted that Plaintiff had mild-moderate muscle weakness with repetitive activities and poor muscle coordination. R. 1109. In his Medical Source Statement of Ability to do Work-related Activities (Physical) form, Dr. Brick indicated that Plaintiff could only occasionally reach overhead or in all other directions using her right hand, but could frequently reach with her left hand. R. 1100-1105. Dr. Brick's treatment notes also reflect issues with hand movement and reaching. *See e.g.* R. 1128 ("[C]an l[i]ft 10 lb occasionally. . . . [H]ands and feet clumsy, Reach overhead can do in[c]onsistently").

In the August 25, 2020 Physical Residual Functional Capacity Assessment, Dr. Boukhemis made numerous statements regarding Plaintiff's inability to reach and manipulate using her hands. R. 123-125 Dr. Boukhemis specifically noted that Plaintiff had manipulation limitations, including limited reaching in any direction, "frequent limitations" in reaching, issues reaching in any direction, "Hands and Feet Clumsy" and "Inconsistent reaching overhead." Later assessment by

23

Dr. Boukhemis did not update the conclusion as to Plaintiff's lack of reaching and manipulation capacity, though Dr. Boukhemis did raise some questions about Plaintiff's credibility regarding the duration and severity of her last MS flare. R. 161, 184 (January 2, 2021 updated Physical Residual Functional Capacity Assessment).

In this case, the ALJ failed to assess Plaintiff's capacity to perform reaching tasks generally and as a part of the three positions of order clerk, document preparer, and credit card interviewer, despite conflicts between the RFC, the medical opinions of Dr. Brick and Dr. Boukhemis, and medical evidence of record. It is possible, as suggested by counsel for the Commissioner *ex post facto*, that the ALJ did not include a reaching restriction because she found Dr. Boukhemis and Dr. Brick's opinions to be unpersuasive. Unfortunately, the ALJ did not articulate that reasoning in the decision. The ALJ either failed to "show her work," or she entirely overlooked the question of whether Plaintiff could perform the functional reaching requirements of work. Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) ("[T]he dispute here arises from a problem that has become all too common among administrative decisions challenged in this court—a problem decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable.").

Regardless, the ALJ's failure to assess Plaintiff's reaching capacity and failure to provide a narrative discussion about Plaintiff's ability to perform reaching functions leaves the undersigned "to guess about how the ALJ arrived at [her] conclusions on Plaintiff's ability to perform relevant functions." Mascio, 780 F.3d at 637. Accordingly, the undersigned now **RECOMMENDS** that Defendant's Motion for Summary Judgment, ECF No. 18, be **DENIED**, Plaintiff's Motion for

Summary Judgment, ECF No. 17, be **GRANTED**, and the Commissioner's decision be **REVERSED** and that this case be **REMANDED** for further reconsideration.

## I.   <u>RECOMMENDATION</u>

For the reasons herein stated, the undersigned **FINDS** that the Commissioner's decision denying Plaintiff's claims is contrary to law and unsupported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment, ECF No. 18, be **DENIED**, Plaintiff's Motion for Summary Judgment, ECF No. 17, be **GRANTED**, and the Commissioner's decision be **REVERSED** and that this case be **REMANDED** for further reconsideration.

Upon remand, the undersigned would **RECOMMEND** that the ALJ consider the medical opinions, alongside the rest of the relevant evidence in the case, and particularly address and articulate the supportability and consistency of those opinions in accordance with 20 C.F.R. § 404.1520c(b)(2) and (c). The undersigned would further **RECOMMEND** that the ALJ assess and provide a narrative discussion about Plaintiff's functional capacity to perform reaching tasks, generally and as an exertional demand required by the proposed representative occupations.

Any party shall have fourteen (14) days (filing of objections) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Additionally, as this report and recommendation concludes the referral from the District Court, the Clerk is further **DIRECTED** to terminate the magistrate judge's association with this case.

Respectfully submitted this 30th day of November, 2022.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE